IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EUCALYPTUS REAL ESTATE, LLC,
et al.,

       Plaintiffs,

v.

INNOVATIVE WORK COMP
SOLUTIONS, LLC, et al.,

       Defendants.

Case No. 21-4091-DDC-GEB

**MEMORANDUM AND ORDER**

Plaintiffs Eucalyptus Real Estate, LLC and Dover Group, LLC filed this declaratory judgment action under 28 U.S.C. § 2201, against defendants Innovative Work Comp Solutions, LLC, INVO Peo, Inc. II, and United Wisconsin Insurance Company. Doc. 1-1; Doc. 33. Plaintiffs allege that they entered an Administrative Service Organization Agreement that obligates defendants to defend a worker's compensation claim and pay any worker's compensation benefits due to the employee. Doc. 33 at 4–5, 13–14.

Defendant United Wisconsin Insurance Company ("United Wisconsin") has filed a Renewed Motion to Dismiss (Doc. 42). The motion asks the court to dismiss plaintiffs' declaratory judgment claim against United Wisconsin under Fed. R. Civ. P. 12(b)(6) for failing to state a plausible claim. United Wisconsin asserts that it is not a party to the Administrative Service Organization Agreement. Thus, United Wisconsin argues, no actual controversy exists between plaintiffs and United Wisconsin. As a consequence, United Wisconsin asserts, plaintiffs' declaratory judgment claim against United Wisconsin fails as a matter of law.

For reasons explained below, the court converts United Wisconsin's Motion to Dismiss under Rule 12(b)(6) into a Motion for Judgment on the Pleadings under Rule 12(c). And the court denies the motion.

## I.     Factual Background

The following facts come from plaintiffs' First Amended Complaint (Doc. 33). The court accepts them as true and views them in the light most favorable to plaintiffs. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (explaining that on a motion for judgment on the pleadings under Rule 12(c) the court "accept[s] the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the non-moving party" (citations and internal quotation marks omitted)).

Plaintiffs Eucalyptus Real Estate, LLC ("Eucalyptus") and Dover Group, LLC ("Dover") are companies who provide support and maintenance services for apartment complexes located in Kansas. Doc. 33 at 4 (First Am. Compl. ¶ 13). In 2017, Dover's employees became employees of Eucalyptus. *Id.* (First Am. Compl. ¶ 14). In November 2018, plaintiffs' insurance broker began working with Tim Knight—an executive officer of defendants Innovative Work Comp Solutions, LCC ("Innovative") and INVO Peo, Inc. II ("INVO")—to procure worker's compensation insurance and related services. *Id.* at 3–4 (First Am. Compl. ¶¶ 12, 15). On behalf of defendants Innovative and INVO, Mr. Knight proposed that plaintiff Dover enter an Administrative Service Organization Agreement ("Agreement") with Innovative to provide worker's compensation insurance and related services. *Id.* at 4 (First Am. Compl. ¶ 16).

Before entering the Agreement, plaintiffs' insurance broker asked Mr. Knight whether the Agreement also covered plaintiff Eucalyptus. *Id.* (First Am. Compl. ¶ 17). Mr. Knight responded:

>Coverage is extended to the employees reported each month to the program. If Client has common ownership with another company and reports those under Dover for this program, they are covered if properly classified. There are quarterly 941 audits to ensure full reporting of payrolls. If other employees are covered, the 941's from those entities would be covered.
>
>We will credit the entire working security deposit toward the renewal deposit if Client renews after one year. This is as opposed to the 50% credit mentioned in the agreement.

*Id.* at 4–5 (First Am. Compl. ¶ 18).

Plaintiffs allege that Dover and Eucalyptus had common ownership at all relevant times. *Id.* at 5 (First Am. Compl. ¶ 19). Plaintiffs allege that, based on Mr. Knight's representations, plaintiff Dover signed the Agreement.[1] *Id.* (First Am. Compl. ¶ 20). Plaintiffs describe the Agreement as "a form document drafted solely by Innovative and/or INVO[.]" *Id.*

The Agreement recites an effective date of November 26, 2018. *Id.* (First Am. Compl. ¶ 21). Also, the Agreement required defendants Innovative and INVO to assume certain duties and obligations, including a duty to provide worker's compensation coverage for "Covered Employees." *Id.* at 5–6 (First Am. Compl. ¶ 22). Plaintiffs concede that the Agreement identifies the "CLIENT" only as plaintiff Dover. *Id.* at 6 (First Am. Compl. ¶ 24). But plaintiffs allege that the parties to the Agreement intended for the Agreement's use of the term "CLIENT" to refer both to plaintiffs Dover and Eucalyptus. *Id.*

---

[1] Plaintiffs attached a copy of the Agreement to their First Amended Complaint. *See* Doc. 33 at 16–22 (First Am. Compl. Ex. A). The court may consider the Agreement when evaluating defendant's Motion for Judgment on the Pleadings. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits[.]" (citations omitted)); *see also Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) ("Exhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss.").

After plaintiff Dover signed the Agreement, plaintiffs received a Certificate of Liability Insurance dated December 10, 2018.² *Id.* (First Amended Compl. ¶ 25). It identifies the "Insurer" as United Wisconsin and the "Insured" as:

> Innovative Work Comp Solutions, LLC
> LCF Dover LLC
> 800 Oak Ridge Turnpike
> Oak Ridge TN 37830.

*Id.* (First Am. Compl. ¶ 26); *see also id.* at 23 (First Am. Compl. Ex. B). The Certificate of Liability Insurance recites that United Wisconsin issued a Workers Compensation and Employers' Liability insurance policy, identified as policy number WC510-00182-018-SZ, and with a policy period from November 30, 2018 through October 1, 2019 ("Policy"). *Id.* at 6–7 (First Am. Compl. ¶ 27); *see also id.* at 23 (First Am. Compl. Ex. B).

Plaintiffs allege that United Wisconsin had received "the NCCI EMR-14" identifying plaintiffs as sister companies before it issued the Policy. *Id.* at 6–7 (First Am. Compl. ¶ 27). And, plaintiffs assert, both of them were intended beneficiaries of the Policy. *Id.* Plaintiffs allege that United Wisconsin issued the Policy "to insure Innovative's workers compensation liability under the terms of the [Agreement,] including liabilities arising from Innovative's status as a 'common law employer' and 'statutory employer[.]'" *Id.* at 7 (First Am. Compl. ¶ 30). And plaintiffs assert that United Wisconsin knew that the Policy "was intended to and did provide workers compensation coverage for employees of" plaintiff Eucalyptus. *Id.* (First Am. Compl. ¶ 31). United Wisconsin received payment and accepted a premium based on the amount of compensation paid to employees of plaintiff Eucalyptus. *Id.* (First Am. Compl. ¶ 33). Plaintiff paid those premiums through defendant Innovative. *Id.*

---

² Plaintiffs attached a copy of the Certificate of Liability Insurance to their First Amended Complaint. Doc. 33 at 23 (First Am. Compl. Ex. B). The court may consider this exhibit when evaluating defendant's motion. *See supra* note 1.

On May 10, 2019, Robert Teague, a Eucalyptus employee, sustained a work-related injury while working at an apartment complex in Topeka, Kansas. *Id.* at 3–4, 8 (First Am. Compl. ¶¶ 11, 13, 35). Plaintiffs reported Mr. Teague's injury to defendant Innovative. *Id.* at 8 (First Am. Compl. ¶ 36). Plaintiffs allege that Mr. Teague was a covered employee for purposes of the Agreement. *Id.* Thus, plaintiffs contend, defendants Innovative and INVO have a duty to provide worker's compensation coverage for Mr. Teague and defend his worker's compensation claim. *Id.* at 10–11 (First Am. Compl. ¶ 45). Also, plaintiffs assert that United Wisconsin is obligated under the Policy to defend Mr. Teague's worker's compensation claim and pay any worker's compensation benefits due to him. *Id.* at 11 (First Am. Compl. ¶ 46). But, to date, defendants Innovative, INVO, and United Wisconsin have refused to defend and pay any worker's compensation benefits due to Mr. Teague. *Id.* (First Am. Compl. ¶ 47).

## II.    Procedural History

Plaintiffs filed this lawsuit in the District Court of Shawnee County, Kansas. Doc. 1-1 (Pet. for Declaratory J.). On December 13, 2021, defendants removed the action to federal court invoking diversity subject matter jurisdiction under 28 U.S.C. § 1332. Doc. 1 at 2 (Notice of Removal ¶ 3). On March 18, 2022, defendant United Wisconsin filed a Motion to Dismiss under Rule 12(b)(6). Doc. 19. About a month later, plaintiffs secured the court's leave under Rule 15(a)(2) to file a First Amended Complaint. Doc. 31. And on April 26, 2022, plaintiffs filed their First Amended Complaint. Doc. 33.

In response to the filing of the First Amended Complaint, the court entered a text order "finding as moot" defendant United Wisconsin's Motion to Dismiss (Doc. 19) because it sought dismissal of the original Petition which the First Amended Complaint had superceded. Doc. 34.

5

So, the court denied the Motion to Dismiss as moot "but without prejudice to filing any future motion addressing plaintiffs' First Amended Complaint." *Id.*

On May 10, 2022, defendant United Wisconsin timely filed an Answer to plaintiffs' First Amended Complaint. Doc. 36. Then, on June 14, 2022, defendant United Wisconsin filed its Renewed Motion to Dismiss. Doc. 42.

Plaintiffs assert that United Wisconsin's Renewed Motion to Dismiss is untimely because this case's Scheduling Order requires "any motions to dismiss asserting . . . failure to state a claim upon which relief may be granted . . . must be filed by March 18, 2022." Doc. 14 at 8 (emphasis omitted). Also, United Wisconsin correctly recognizes that the Renewed Motion to Dismiss is untimely under Rule 12(b)(6) which requires that such a motion "must be made *before* pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b) (emphasis added); *see also Swearingen v. Honeywell, Inc.*, 189 F. Supp. 2d 1189, 1193 (D. Kan. 2002) ("Technically, it is impermissible under the Federal Rules to submit an answer and thereafter file a Rule 12(b)(6) motion to dismiss.").

Nevertheless, a court faced with a post-answer Rule 12(b)(6) motion may exercise its discretion and convert such a motion into a Rule 12(c) motion for judgment on the pleadings if the basis for the Rule 12(b)(6) motion is cognizable within a Rule 12(c) motion. *Helm v. Kansas*, No. 08-2459-JAR, 2009 WL 2168886, at *1 (D. Kan. July 21, 2009); *Swearingen*, 189 F. Supp. 2d at 1193. Meanwhile, Federal Rule of Civil Procedure 12(h)(2) permits a party to raise a failure to state a claim defense in a Rule 12(c) motion. *Swearingen*, 189 F. Supp. 2d at 1193. So, because United Wisconsin can raise the legal basis for their Renewed Motion to Dismiss in a Rule 12(c) motion and because denying the Rule 12(b)(6) motion as untimely almost certainly would lead United Wisconsin simply to restyle and refile the pending motion as

6

a Rule 12(c) motion, this court exercises its discretion and converts the Rule 12(b)(6) motion into a Rule 12(c) motion.

Also, a Rule 12(c) motion is timely. Rule 12(c) provides that "a party may move for judgment on the pleadings" "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). Here, the pleadings are closed. And the trial isn't scheduled until August 1, 2023. Doc. 59 at 2. So, the court sees no reason that the filing of the Rule 12(c) motion will delay trial.

For all these reasons, the court converts defendant United Wisconsin's Renewed Motion to Dismiss under Rule 12(b)(6) to a Motion for Judgment on the Pleadings under Rule 12(c). The court now provides the governing standard for Rule 12(c) motions, below.

### III. Legal Standard

A court evaluates a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion to dismiss. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). For a complaint to survive a Rule 12(b)(b) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(b) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings, the court must assume that the factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Atl. Richfield*, 226 F.3d at 1160 (explaining that on

7

a Rule 12(c) motion, the court must "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party" (citation and internal quotation marks omitted)). And while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**IV.     Analysis**

Defendant United Wisconsin argues that no actual controversy exists because plaintiffs' declaratory judgment action seeks declarations about the parties' obligations under the Agreement—a contract that only plaintiff Dover and defendant Innovative entered, not United Wisconsin. United Wisconsin's motion theorizes that it isn't a party to the Agreement, and thus, it argues that no actual controversy exists between plaintiffs and United Wisconsin. As a consequence, United Wisconsin asks the court to dismiss it from this declaratory judgment action.

Our court has determined, based "on the historical purpose of declaratory judgments, that only those parties directly involved with the case's controversy should be joined as defendants." *Potomac Ins. Co. of Ill. v. Pella Corp.*, No. 00-4013-DES, 2001 WL 421255, at *3 (D. Kan. Apr. 20, 2001) (citations and footnote omitted). Also, our court has recognized that in "any cause of action there will be untold scores of individuals who will have peripheral interest in the action's outcome." *Id.* But, because "the court's power to grant declaratory relief directly flows from [28 U.S.C.] § 2201, the court is bound to restrict its action in accordance with the statute's directives." *Id.* The "core of § 2201" requires "that any relief granted will directly impact

8

and/or resolve an existing conflict between the parties." *Id.* Thus, if "a party's interest is not directly intertwined with the controversy, then any relief will only be advisory at best." *Id.*

Here, United Wisconsin argues, no controversy exists between plaintiffs and United Wisconsin because United Wisconsin isn't a party to the Agreement. Instead, plaintiffs allege that plaintiff Dover entered the Agreement only with defendant Innovative. Doc. 33 at 5 (First Am. Compl. ¶ 20) (alleging that plaintiff Dover signed the Agreement drafted "solely by Innovative and/or INVO"); *see also id.* at 16 (First Amended Compl. Ex. A (reciting in the first paragraph of the Agreement that "is entered into by and between INNOVATIVE WORK COMP SOLUTIONS . . . and DOVER LLC")). And plaintiffs never allege that United Wisconsin was a party to the Agreement.

United Wisconsin correctly asserts that "[g]enerally, where the relief requested is the interpretation of a contract to which plaintiff is not a party[,]" plaintiff "does not having standing to pursue [a] declaratory judgment action." *Kan. State Univ. v. Prince*, 673 F. Supp. 2d 1287, 1295 (D. Kan. 2009) (citation and internal quotation marks omitted). But plaintiffs respond to United Wisconsin's argument by asserting that their declaratory judgment action isn't limited to seeking declarations just about the Agreement. Instead, they also are seeking declarations about the Policy that United Wisconsin issued for worker's compensation insurance coverage.

Indeed, plaintiffs allege that "United Wisconsin is obligated, under the United Wisconsin Policy to defend [Mr.] Teague's worker's compensation claim and to pay any workers compensation benefits due to" him. Doc. 33 at 11 (First Am. Compl. ¶ 46). Also, plaintiffs' First Amended Complaint seeks as one of the forms of declaratory relief: "Judgment in the form of a declaration that United Wisconsin is obligated to defend the Teague Workers Compensation

9

Claim and pay any workers compensation benefits due to Teague as a result of his May 10, 2019 work-related injury[.]" Doc. 33 at 14 (First Am. Compl. ¶ C).

Plaintiffs argue that the Policy obligates United Wisconsin to provide worker's compensation coverage to both plaintiff Dover and Eucalyptus because they are intended third party beneficiaries of the Policy. Plaintiffs have alleged that United Wisconsin "had received the NCCI EMR-14 identifying [p]laintiffs as sister companies" before it issued the Policy. Doc. 33 at 6–7 (First Am. Compl. ¶ 27). And, plaintiffs allege, they "were intended beneficiaries of the United Wisconsin Policy." *Id.*

"'Kansas law allows a qualified third-party beneficiary plaintiff to enforce a contract expressly made for his or her benefit even though he or she was not a party to the transaction.'"[3] *Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego, Kan.*, 535 F. App'x 653, 659–60 (10th Cir. 2013) (quoting *State ex rel. Stovall v. Reliance Ins. Co.*, 107 P.3d 1219, 1230–31 (Kan. 2005)). "Kansas case law distinguishes third-party contract beneficiaries into the general classes of intended beneficiaries and incidental beneficiaries." *Id.* at 660 (citing *Noller v. GMC Truck & Coach Div.*, 772 P.2d 271, 275 (Kan. 1989)). "A beneficiary may sue to enforce a contract made by others only if he is an intended beneficiary, *i.e.*, one who the contracting parties intended should receive a direct benefit from the contract." *Id.* (citing *Noller*, 772 P.2d at 275). When deciding "'whether a particular person is an intended beneficiary of a contract, the court applies

---

[3]     Both parties' briefs cite Kansas law governing contract interpretation but neither explains why Kansas law governs the Policy at issue. A "'[f]ailure to present facts sufficient to determine where the contract is made may justify a default to forum law.'" *In re K.M.H.*, 169 P.3d 1025, 1032 (Kan. 2007) (quoting *Layne Christensen Co. v. Zurich Canada*, 38 P.3d 757, 767 (Kan. Ct. App. 2002)). Also, in Kansas, "'the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred.'" *Brenner v. Oppenheimer & Co. Inc.*, 44 P.3d 364, 376 (Kan. 2002) (quoting *Sys. Design & Mgmt. Info., Inc. v. Kan. City Post Off. Emps. Credit Union*, 788 P.2d 878, 881 (Kan. Ct. App. 1990)). Because the parties have failed to present sufficient facts for the court to determine the choice of law question, and only cite the forum's law, the court defaults to the law of the forum state—Kansas.

the general rules for construction of contracts.'"  *Id.* (quoting *Byers v. Snyder*, 237 P.3d 1258, 1265 (Kan. Ct. App. 2010)).

      Here, plaintiffs haven't attached the Policy to their First Amended Complaint.  So, the court can't construe the Policy to determine whether the parties to that Policy intended to make both plaintiff Dover and plaintiff Eucalyptus beneficiaries of the Policy.  United Wisconsin's Reply argues—for the first time—that plaintiffs bear the burden "of establishing standing to assert claims under a third party beneficiary theory."  Doc. 45 at 4 (citing *State ex rel. Stovall v. Reliance Ins. Co.*, 107 P.3d 1219, 1231 (Kan. 2005)); *see also Stovall*, 107 P.3d at 1231 ("The burden of establishing standing to bring suit as a third party rests with the party asserting it.").  Indeed, the Kansas Supreme Court requires, "'[b]efore the issue is reached of whether a third party may directly enforce a contract from which he would benefit, the third party must show the existence of some provision in the contract that operates to his benefit.'"  *Stovall*, 107 P.3d at 1231 (quoting *Hartford Fire Ins. Co. v. W. Fire Ins. Co.*, 597 P.2d 622, 623 Syl. ¶ 5 (Kan. 1979)).

      But generally, the court doesn't consider arguments raised for the first time in a Reply.  *See Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003) (holding that an argument raised for the first time in a reply brief is waived (citation omitted)); *see also Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-1094-JTM-TJJ, 2018 WL 489100, at *1 (D. Kan. Jan. 19, 2018) ("[T]he Court will not consider arguments raised for the first time in a reply brief, particularly where the arguments could have been made in the first instance.").  And United Wisconsin cites no cases holding that a third party beneficiary fails to allege a plausible contract claim simply by failing to allege in its Complaint that a particular portion of the contract operates to the party's benefit.  Because United Wisconsin raises this argument for

11

the first time in its Reply and plaintiffs thus haven't had an opportunity to respond to it, the court declines to grant judgment on the pleadings based on plaintiffs' failure to allege a specific portion of the Policy operating to both plaintiffs' benefit as third-party beneficiaries.  The court does so without prejudice to United Wisconsin reasserting this argument at the dispositive motion stage.

Also, United Wisconsin's Reply argues—again for the first time—that no actual controversy exists between plaintiff Dover and United Wisconsin because plaintiff Dover doesn't employ an injured employee for whom it seeks coverage from United Wisconsin.  Doc. 45 at 3.  Again, the court doesn't need to address this argument because United Wisconsin raises it for the first time in its Reply.  *See Minshall*, 323 F.3d at 1288; *see also Cimarron Crossing Feeders, LLC*, 2018 WL 489100, at *1.  In any event, the controversy here involves the scope of the Policy's coverage.  The Policy—issued by United Wisconsin—identifies the "insured" as "Innovative Work Comp Solutions, LLC LCF Dover LLC[.]"[4]  Taking plaintiffs' allegations as true and viewing them in their favor—as the court must on a motion for judgment on the pleadings—the court finds that an actual controversy exists between plaintiff Dover and United Wisconsin about the scope of coverage of the Policy—one that United Wisconsin issued and that lists plaintiff Dover as an insured.  Thus, the court won't dismiss plaintiff Dover's declaratory judgment claim against United Wisconsin.

V.     **Conclusion**

For reasons explained, the court denies defendant United Wisconsin's Renewed Motion to Dismiss.

---

[4] United Wisconsin's Reply represents that "LCF" is "an insurance industry abbreviation for 'Leasing Company For' consistent with the administrative service organization agreement that Plaintiff Dover agreed to in the Agreement."  Doc. 45 at 3 n.1.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant United Wisconsin Insurance Company's Renewed Motion to Dismiss (Doc. 42) is denied.

**IT IS SO ORDERED.**

**Dated this 22th day of November, 2022, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
